**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Rachel Lumbra, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Utz Quality Foods LLC d/b/a Zapp's and Dirty Potato Chips,<br><br>Defendant. | Case No. 1:26-cv-1291 (AMN/DJS)<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Rachel Lumbra (hereinafter "Plaintiff"), individually and on behalf of all others similarly situated, by his attorneys, alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on personal knowledge:

## NATURE OF THE ACTION

1. This action seeks to remedy the deceptive and misleading business practices of Utz Quality Foods LLC d/b/a Zapp's and Dirty Potato Chips (hereinafter "Defendant" or "Utz") with respect to the manufacturing, marketing, and sale of Defendant's Zapp's® and Dirty® potato chips products throughout the state of New York (hereinafter the "Products"):

- 1.5oz Zapp's® Brand Bayou Blackened Ranch Potato Chips;
- 2.5oz Zapp's® Brand Bayou Blackened Ranch Potato Chips;
- 8oz Zapp's® Brand Bayou Blackened Ranch Potato Chips;
- 2oz Dirty® Brand Salt and Vinegar Potato Chips;
- 1.5oz Zapp's® Brand Salt and Vinegar Potato Chips (60ct);
- 2oz Dirty® Brand Maui Onion Potato Chip;

- 2.5oz Zapp's® Brand Big Cheezy Potato Chip;
- 8oz Zapp's® Brand Big Cheezy Potato Chip;
- 2oz Dirty® Brand Sour Cream and Onion Potato Chips.

2. Defendant has improperly, deceptively, and misleadingly labeled and marketed its Products to reasonable consumers, like Plaintiff, by omitting and not disclosing to consumers on its packaging that consumption of the Products may increase the risk of contracting *Salmonella*.

3. As described in further detail below, the Products contain *Salmonella*, which could lead to serious and life-threatening adverse health consequences.

4. Defendant specifically lists the ingredients in the Products on the labeling; however, Defendant fails to disclose that the Products contain, or are at the risk of containing, *Salmonella*.

5. A few representative examples of Defendant's lack of disclosure on the Products are depicted below:


220
CALORIES
PER BAG
See Nutrition
Information For
Fat Content
Zapp's
POTATO
CHIPS
New Orleans Kettle Style
SALT & VINEGAR
Artificially Flavored
NET WT 1.5 OZ (42.5g)


Nutrition Facts
1 serving per container
Serving size 1 bag (42.5g)
Amount per serving
Calories 220
% Daily Value*
Total Fat 12g 16%
Saturated Fat 1.5g 8%
Trans Fat 0g
Cholesterol 0mg 0%
Sodium 270mg 12%
Total Carbohydrate 24g 9%
Dietary Fiber 1g 5%
Total Sugars <1g
Protein 3g
Vitamin D 0.2mcg 0%
Calcium 10mg 0%
Iron 0.7mg 4%
Potassium 490mg 10%
CONTAINS MILK
Manufactured By or For
Utz Quality Foods, LLC
Hanover, PA 17331
Zapp's
POTATO
CHIPS
ENJOY GREAT TASTING
ZAPP'S ANYWHERE!
For online ordering please visit
our fun site:
WWW.ZAPPS.COM
Find us on social media
@ZappsChips
0 83791 01014 4
Scan here for more
food information or call
1-866-880-2086.


Zapp's®
POTATO CHIPS
New Orleans Kettle Style
BIG CHEEZY
Flavored With Other Natural & Artificial Flavors
NET WT 2.5 OZ (70.9g)


Nutrition Facts
Calories
150
370
Zapp's
POTATO CHIPS
ENJOY GREAT TASTING ZAPP'S ANYWHERE!
WWW.ZAPPS.COM
Find us on social media
@ZappsChips


Zapp's
POTATO CHIPS
New Orleans Kettle Style
BIG CHEEZY
Flavored With Other Natural & Artificial Flavors
NET WT 8 OZ (226.8g)


Nutrition Facts
Calories 150
Zapp's
POTATO CHIPS
ENJOY GREAT TASTING ZAPP'S ANYWHERE!
WWW.ZAPPS.COM
Find us on social media @ZappsChips



150 CALORIES PER BAG
Zapp's® POTATO CHIPS
New Orleans Kettle Style
BAYOU BLACKENED RANCH™
FLAVORED WITH OTHER NATURAL & ARTIFICIAL FLAVORS
NET WT 1.5 OZ (42.5g)




Nutrition Facts
1 serving per container
Serving size 1 bag (42.5g)
Amount per serving
Calories 150
% Daily Value*
Total Fat 8g 11%
Saturated Fat 1g 5%
Cholesterol 0mg 0%
Protein 2g
Vitamin D 0.1mcg 0%
Calcium 10mg 0%
Iron 0.5mg 2%
Potassium 340mg 8%
CONTAINS MILK.
Manufactured By or For
Utz Quality Foods, LLC
Hanover, PA 17331
Zapp's POTATO CHIPS
ENJOY GREAT TASTING ZAPP'S ANYWHERE!
WWW.ZAPPS.COM
Find us on social media at ZappsChips
0 83791 27291 7
Scan here for more food information.


Zapp's
POTATO CHIPS
New Orleans Kettle Style
BAYOU BLACKENED RANCH
FLAVORED WITH OTHER NATURAL & ARTIFICIAL FLAVORS
NET WT 2.5 OZ (70.9g)


Nutrition Facts
Calories 150 360
Zapp's
POTATO CHIPS
ENJOY GREAT TASTING ZAPP'S ANYWHERE!
WWW.ZAPPS.COM
Scan here for more food information.


Zapp's
POTATO CHIPS
New Orleans Kettle Style
BAYOU BLACKENED RANCH™
FLAVORED WITH OTHER NATURAL & ARTIFICIAL FLAVORS
NET WT 8 OZ (226.8g)


Nutrition Facts
Calories 150
Zapp's
POTATO CHIPS
Our New Orleans Kettle Style chips are cooked to perfection and combined with premium ingredients. This special recipe results in a crunchier, tastier and unique potato chip experience which we hope you will prefer. We thank you for buying our product. Enjoy, and laissez les bon temps rouler!
The Folks at Zapp's Potato Chips
ENJOY GREAT TASTING ZAPP'S ANYWHERE!
WWW.ZAPPS.COM


"DIRTY"®
DELI STYLE
POTATO CHIPS
SOUR CREAM & ONION
FLAVORED
Artfully Crafted,
Partially Peeled,
Thick Cut Kettle Style
For The
Perfect Crunch!
NET WT 2 OZ (56.7g)


Nutrition Facts
1 serving per container
Serving size 1 bag (56.7g)
Amount per serving
Calories 290
% Daily Value*
"DIRTY" tells the story of the humble potato, fresh from the earth, sliced and cooked the same way it's been done since 1986. We leave some of the peel on to give them their "Dirty" nature for a crunchier, tastier potato chip!
Manufactured By or For
Utz Quality Foods, LLC
Hanover, PA 17331
Find us on social media
@DirtyPotatoChips


"DIRTY"®
DELI STYLE
POTATO CHIPS
SALT & VINEGAR
ARTIFICIALLY FLAVORED
Artfully Crafted,
Partially Peeled,
Thick Cut Kettle Style
For The
Perfect Crunch!
NET WT 2 OZ (56.7g)


Nutrition Facts
1 serving per container
Serving size 1 bag (56.7g)
Amount per serving
Calories 290
% Daily Value*
Total Fat 21%
Cholesterol 0%
Sodium 16%
Total Carbohydrate 12%
Protein 4g
"DIRTY" tells the story of the humble potato, fresh from the earth, sliced and cooked the same way it's been done since 1986. We leave some of the peel on to give them their "Dirty" nature for a crunchier, tastier potato chip!
Find us on social media @dirtypotatochips
Manufactured By or For
Utz Quality Foods, LLC
Hanover, PA 17331
www.dirtys.com
Scan here for more food information or call


"DIRTY"
DELI STYLE
POTATO CHIPS
MAUI ONION
FLAVORED
Artfully Crafted,
Partially Peeled,
Thick Cut Kettle Style
For The
Perfect Crunch!
NET WT 2 OZ (56.7g)


Nutrition Facts
1 serving per container
Serving size 1 bag (56.7g)
Amount per serving
Calories 290
% Daily Value*
Total Fat 21%
Saturated Fat 10%
Cholesterol 0%
Sodium 15%
Total Carbohydrate 12%
Dietary Fiber 7%
Protein
Vitamin D 0%
Calcium 4%
Iron 8%
Potassium 15%
Manufactured By or For
Utz Quality Foods, LLC
Hanover, PA 17331
"DIRTY" tells the story of the humble potato, fresh from the earth, sliced and cooked the same way it's been done since 1986. We leave some of the peel on to give them their "Dirty" nature for a crunchier, tastier potato chip!

6. *Salmonella* is recognized to be a dangerous substance. *Salmonella* can cause nausea, vomiting, diarrhea, or bloody diarrhea, abdominal cramping, and fever.[1]

7. Consumers like the Plaintiff trust manufacturers such as Defendant to sell products that are safe and free from harmful known substances, including *Salmonella*.

8. Plaintiff and those similarly situated (hereinafter "Class Members") certainly expect that the food products they purchase will not contain, or risk containing, any knowingly harmful substances that cause disease.

9. Unfortunately for consumers, like Plaintiff, the food Products they purchased contain, or at risk of containing, *Salmonella*.

10. Defendant is using a marketing and advertising campaign that omits from the ingredients lists that the Products contain *Salmonella*. This omission leads a reasonable consumer to believe they are not purchasing a product with a known bacterium when in fact they are purchasing a product contaminated with *Salmonella*.

11. Defendant's marketing and advertising campaign includes the one place that every consumer looks when purchasing a product – the packaging and labels themselves. As such, a reasonable consumer reviewing Defendant's labels reasonably believes that they are purchasing a product that is safe for oral ingestion and does not contain any harmful bacterium. Indeed, consumers expect the ingredient listing on the packaging and labels to accurately disclose the ingredients within the Products. Thus, reasonable consumers would not think that Defendant is omitting that the Products contain, or are at risk of containing, *Salmonella.*

12. Defendant's advertising and marketing campaign is false, deceptive, and misleading because the Products do contain, or risk containing, *Salmonella*, which is dangerous to

[1] https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/utz-quality-foods-llc-issues-voluntary-recall-certain-limited-varieties-zapps-and-dirty-potato-chips

one's health and well-being. Nevertheless, Defendant does not list or mention *Salmonella* anywhere on the Products' packaging or labeling.

13. Plaintiff and Class Members relied on Defendant's misrepresentations and omissions of the safety of the Products and what is in the Products when they purchased them.

14. Consequently, Plaintiff and Class Members lost the entire benefit of their bargain when what they received was a food product contaminated with a known bacterium that is harmful to consumers' health.

That is because Defendant's Products containing, or at risk of containing, a known dangerous substance have no value.

15. As set forth below, food products containing *Salmonella*, such as Defendant's Products, are in no way safe for consumption and are entirely worthless.

16. Alternatively, Plaintiff and Class Members paid a price premium for the Products based upon Defendant's marketing and advertising campaign including its false and misleading representations and omission on the Products' labels. Given that Plaintiff and Class Members paid a premium for the Products, Plaintiff and Class Members suffered an injury in the amount of the premium paid.

17. Accordingly, Defendant's conduct violated and continues to violate, *inter alia*, New York General Business Law §§ 349 and 350. Defendant also breached and continues to breach its warranties regarding the Products.

18. Plaintiff brings this action against Defendant on behalf of herself and Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

## FACTUAL BACKGROUND

19. Defendant manufactures, markets, advertises, and sells food products.

20. Consumers have become increasingly concerned about the effects of ingredients in products that they orally ingest. Companies, such as Defendant, have capitalized on consumers' desire for unadulterated and properly labeled food products, and indeed, consumers are willing to pay, and have paid, a premium for these products.

21. Consumers lack the meaningful ability to test or independently ascertain or verify whether a product contains unsafe substances, such as *Salmonella*, especially at the point of sale, and therefore must and do rely on Defendant to truthfully and honestly report what the Products contain or are at risk of containing on the Products' packaging or labels.

22. Defendant manufactures, markets, advertises, and sells the Zapp's and Dirty Potato Chips products. The Products are marketed as potato chips, and that a consumer can use and consume them as such.

23. More specifically, Defendants market their Products as "potato chips". The label of the Product notes that the Product is safe to be consumed and can be used as "potato chips". Indeed, Defendant is well aware that its Product is to be consumed, labeling and marketing the Product as high-end potato chips made with "PREMIUM INGREDIENTS." Defendant labels that its Products do not contain harmful ingredients, noting that they are free of trans fats, artificial colors and flavors, MSG, preservatives, and artificial sweeteners. Accordingly, reasonable consumers believe that the Products do not contain any harmful bacteria, which would make the unsuitable for human consumption.

24. The Products' packaging does not identify *Salmonella*. Indeed, *Salmonella* is not listed in the ingredients section, nor is there any warning about the inclusion (or even potential

inclusion) of *Salmonella* in the Products. This leads reasonable consumers to believe the Products do not contain, and are not at risk of containing, *Salmonella*.

25. However, the Products contain, or are at risk of containing, *Salmonella*.

26. *Salmonella* infection (salmonellosis) is a common bacterial disease that affects the intestinal tract. Salmonella bacteria typically live in animal and human intestines and are shed through stool (feces). Humans become infected most frequently through contaminated water or food.[2]

27. Independent testing confirmed and demonstrated the presence of *Salmonella* in the Products.

28. Defendant is a large and sophisticated corporation that has been in the business of producing, manufacturing, selling, and distributing food products for many years, including producing and manufacturing the Products.

29. Defendant is in the unique and superior position of knowing the ingredients and raw materials used in the manufacturing of its Products and possesses unique and superior knowledge regarding the manufacturing process of the Products, the manufacturing process of the ingredients and raw materials the Products contain, and the risks associated with those processes, such as the risk of *Salmonella* contamination.

30. Accordingly, Defendant possesses superior knowledge regarding the risks involved in the production and manufacturing of its Products. Such knowledge is not readily available to consumers like Plaintiff and Class Members.

31. Defendant has a duty to provide consumers, like Plaintiff and Class Members, with accurate information about the contents of the Products.

[2] https://www.mayoclinic.org/diseases-conditions/salmonella/symptoms-causes/syc-20355329

32. Therefore, Defendant's false, misleading, and deceptive omissions regarding the Products containing *Salmonella* is likely to continue to deceive and mislead reasonable consumers and the public, as they have already deceived and misled Plaintiff and the Class Members.

33. Defendant's misrepresentation and omission were material and intentional because people are concerned with what is in the products that they ingest. Consumers such as Plaintiff and the Class Members are influenced by the marketing and advertising campaign, the Products labels, and the listed ingredients. Defendant knows that if they had not omitted that the Products contained or were at the risk of containing *Salmonella*, then Plaintiff and the Class would not have purchased the Products at all.

34. Through its deceptive advertising and labeling, Defendant has violated, *inter alia*, NY General Business Law § 392-b by: a) putting upon an article of merchandise, bottle, wrapper, package, label, or other thing containing or covering such an article, or with which such an article is intended to be sold, or is sold, a false description or other indication of or respecting the kind of such article or any part thereof; and b) selling or offering for sale an article which, to its knowledge, is falsely described or indicated upon any such package or vessel containing the same, or label thereupon, in any of the particulars specified.

35. Consumers rely on marketing and information in making purchasing decisions.

36. By omitting that the Products include *Salmonella* on the labels of the Products throughout the Class Period, Defendant knows that those omissions are material to consumers since they would not purchase a product with a harmful bacterium.

37. Defendant's deceptive representation and omission are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

38. Plaintiff and the Class Members reasonably relied to their detriment on Defendant's misleading representations and omissions.

39. Defendant's false, misleading, and deceptive misrepresentation and omission are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiff and the Class Members.

40. In making the false, misleading, and deceptive representation and omission described herein, Defendant knows and intended that consumers would pay a premium for a product marketed without *Salmonella* over comparable products not so marketed.

41. As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representation and omission, Defendant injured Plaintiff and the Class Members in that they:

a. Paid a sum of money for Products that were not what Defendant represented;

b. Paid a premium price for Products that were not what Defendant represented;

c. Were deprived of the benefit of the bargain because the Products they purchased was different from what Defendant warranted;

d. Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendant represented;

e. They ingested a substance that was of a different quality than what Defendant promised; and

f. Were denied the benefit of the properties of the Products Defendant promised.

42. Had Defendant not made the false, misleading, and deceptive representation and omission, Plaintiff and the Class Members would not have been willing to pay the same amount

for the Products they purchased and, consequently, Plaintiff and the Class Members would not have been willing to purchase the Products.

43. Defendant had exclusive knowledge regarding the ingredients and manufacture of the Products, including the contentions that lead to the *Salmonella* contamination. Plaintiff and the Class Members had no knowledge regarding the actual ingredients in the Products or of Defendant's manufacture of the Products.

44. Plaintiff and the Class Members paid for Products that do not contain *Salmonella*. Since the Products do indeed contain *Salmonella*, a harmful bacterium, the Products Plaintiff and the Class Members received were worth less than the Products for which they paid.

45. Plaintiff and the Class Members all paid money for the Products; however, Plaintiff and the Class Members did not obtain the full value of the advertised Products due to Defendant's misrepresentations and omissions. Plaintiff and the Class Members purchased, purchased more of, and/or paid more for, the Products than they would have had they known the truth about the Products. Consequently, Plaintiff and the Class Members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

46. Plaintiff and Class Members read and relied on Defendant's representation about the benefits of using the Products and purchased Defendant's Products based thereon. Had Plaintiff and Class Members known the truth about the Products, i.e., that it contains a harmful bacterium (i.e. *Salmonella*), they would not have been willing to purchase it at any price, or, at minimum would have paid less for it.

**Defendant's Recall is Insufficient**

47. Defendant recently conducted a product recall on May 4, 2026[3], (hereinafter "Recall"), admitting that the Products contain *Salmonella.*

48. Independent testing, notification to Utz and the Recall confirmed and demonstrated the presence of *Salmonella* in the Products.

49. The Products were recalled, and consumers were instructed to "not eat [the Products] and should discard any products they may have." Hence, the Products are unreasonably dangerous, and unsuitable for one of their principal and intended purposes.

50. However, Defendant does everything possible to limit the publication of the Recall. Indeed, Defendant does not provide notice of the Recall on its websites (https://www.dirtys.com/ or https://www.utzsnacks.com/). Defendant's consumer service webpages also make not mention of the Recall or how to receive a refund for the recalled Products. *See* https://www.utzsnacks.com/pages/customer-support. Nor is there any mention of the Recall on Defendant's social media accounts. Put simply, Defendant does not even do the bare minimum to provide notice to its consumers.

51. The Recall provides that consumers with questions or refund requests are directed to contact the customer care team and provides a phone number to call. When you call this number, Defendant does not offer any refund, but only replacement bags of chips or coupons for additional chips. Accordingly, people that simply want a refund are left without a remedy.

52. Additionally, Defendant is well aware that any consumer who was made aware of the recall would be predisposed to throwing the Products away, and Defendant leans into this predisposition by directing consumers to immediately stop using the recalled Products. Defendant

---

[3] https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/utz-quality-foods-llc-issues-voluntary-recall-certain-limited-varieties-zapps-and-dirty-potato-chips

is also aware that consumers shop in multiple locations and may or may not purchase the Products at the same location each time. Also, most consumers do not maintain receipts and therefore cannot obtain a refund at the purchase location for the recalled Products.

53. Accordingly, Defendant's recall is designed to minimize Defendant's own liability, to reach very few people, and to benefit very few of the consumers who purchased the Products.

54. The class action remedy is superior to Defendant's failed recall in every conceivable fashion.

## JURISDICTION AND VENUE

55. This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section §1332(d) in that (1) this is a class action involving more than 100 class members; (2) Plaintiff is a citizen of New York and Defendant Utz Quality is a Delaware limited liability company, with its headquarters located in Hanover, Pennsylvania; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

56. This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the state of New York, contracts to supply goods within the state of New York, and supplies goods within the state of New York.

57. Venue is proper because Plaintiff and many Class Members reside in the Northern District of New York, and throughout the state of New York. A substantial part of the events or omissions giving rise to the Classes' claims occurred in this district.

## PARTIES

### Plaintiff

58. Plaintiff Rachel Lumbra is a citizen and resident of Schenectady, New York. During the applicable statute of limitations period, Plaintiff purchased and used Defendant's

Products that contained *Salmonella*, including Products that were subject to the Recall. More specifically, during the class period Plaintiff purchased Big Cheezy, as well as the Sour Cream and Onion products.

59. Had Defendant not made the false, misleading, and deceptive representations and omissions regarding the contents of the Products, Plaintiff would not have been willing to purchase the Products. Plaintiff purchased, purchased more of, and/or paid more for, the Products than she would have had she known the truth about the Products. The Products Plaintiff received were worthless because they contain the known harmful substance, *Salmonella*. Alternatively, Plaintiff paid a price premium based on Defendant's false, misleading, and deceptive misrepresentations and omissions. Accordingly, Plaintiff was injured in fact and lost money as a result of Defendant's improper conduct.

**Defendant**

60. Defendant Utz Quality is a Delaware limited liability company, with its headquarters located in Hanover, Pennsylvania.

61. Defendant manufactures, markets, advertises, and distributes the Products throughout the United States. Defendant created and/or authorized the false, misleading, and deceptive advertisements, packaging, and labeling of its Products.

## CLASS ALLEGATIONS

62. Plaintiff brings this matter on behalf of herself and those similarly situated. As detailed at length in this Complaint, Defendant orchestrated deceptive marketing and labeling practices. Defendant's customers were uniformly impacted by and exposed to this misconduct. Accordingly, this Complaint is uniquely situated for class-wide resolution.

63. The Class is defined as all consumers who purchased the Products in the state of New York at any time during the Class Period.

64. The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

65. Numerosity: Class Members are so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers in the Class who are Class Members as described above who have been damaged by Defendant's deceptive and misleading practices.

66. Commonality: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a. Whether Defendant was responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

b. Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Products;

c. Whether Defendant made false and/or misleading statements and omissions to the Class and the public concerning the contents of its Products;

d. Whether Defendant's false and misleading statements and omissions concerning its Products were likely to deceive the public; and

e. Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members?

67. Typicality: Plaintiff is a member of the Class. Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased Defendant's Products. Plaintiff is entitled to relief under the same causes of action as the other Class Members.

68. Adequacy: Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the Class Members she seeks to represent, her consumer fraud claims are common to all members of the Class, she has a strong interest in vindicating her rights, she has retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

69. Predominance: Pursuant to Rule 23(b)(3), common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class. The Class issues fully predominate over any individual issues because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices.

70. Superiority: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a. The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b. The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

c. When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d. This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f. This class action will assure uniformity of decisions among Class Members;

g. The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h. Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by a single class action; and

i. It would be desirable to concentrate in this single venue the litigation of all Class Members who were induced by Defendant's uniform false advertising to purchase their Products.

71. Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## CLAIMS

### FIRST CAUSE OF ACTION
### VIOLATION OF NEW YORK GBL § 349
### (On Behalf of Plaintiff and Class Members)

72. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

73. New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

74. The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and Class Members seek monetary damages against Defendant, enjoining them from inaccurately describing, labeling, marketing, and promoting the Products.

75. There is no adequate remedy at law.

76. Defendant misleadingly, inaccurately, and deceptively advertise and market their Products to consumers.

77. Defendant's improper consumer-oriented conduct—including failing to disclose that the Products have *Salmonella*—is misleading in a material way in that it, *inter alia*, induced Plaintiff and Class Members to purchase Defendant's Products and to use the Products when they otherwise would not have. Defendant made the untrue and/or misleading statements and omissions willfully, wantonly, and with reckless disregard for the truth.

78. Plaintiff and Class Members have been injured inasmuch as they purchased Products that were mislabeled, unhealthy, and entirely worthless. Accordingly, Plaintiff and Class Members received less than what they bargained and paid for.

79. Defendant's advertising and Products' packaging and labeling induced Plaintiff and Class Members to buy Defendant's Products.

80. Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and Class Members have been damaged thereby.

81. As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and Class Members are entitled to monetary, statutory, compensatory, treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**VIOLATION OF NEW YORK GBL § 350**
**(On Behalf of Plaintiff and Class Members)**

82. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

83. N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

84. N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

85. Defendant's labeling and advertisements contain untrue and materially misleading statements and omissions concerning its Products in as much as it misrepresents that the Products are safe for use and doesn't list that the Products contain *Salmonella*.

86. Plaintiff and Class Members have been injured in as much as they relied upon the labeling, packaging, and advertising and purchased Products that were mislabeled, unhealthy, and entirely worthless. Accordingly, Plaintiff and Class Members received less than what they bargained and paid for.

87. Defendant's advertising, packaging, and Products' labeling induced Plaintiff and Class Members to buy Defendant's Products.

88. Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

89. Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

90. Defendant made the material misrepresentations described in this Complaint in its advertising and on the Products' packaging and labeling.

91. Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Products were and continue to be exposed to Defendant's material misrepresentations.

92. As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and Class Members are entitled to monetary, statutory, compensatory, treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

## THIRD CAUSE OF ACTION
## BREACH OF EXPRESS WARRANTY
## (On Behalf of Plaintiff and Class Members)

93. Plaintiff repeat and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

94. Plaintiff brings this claim individually and on behalf of all similarly situated Class Members.

95. Defendants, as the designers, manufacturers, packagers, labelers, marketers, distributors, and/or sellers expressly warranted that the Product were fit for their intended purpose by expressly warranting that the Product were "potato chips" made with "premium ingredients" and were safe to consume. The label of the Product notes that the Product is safe to be consumed as "potato chips".

96. Defendants made the foregoing express representation and warranty to all consumers, which became the basis of the bargain between Plaintiff, Class Members, and Defendants.

97. In fact, the Product is not fit for such purpose because the express warranty is a false, deceptive, and misleading misrepresentation. The Product is contaminated, was not manufactured or tested in compliance with good manufacturing practices, was not made with premium ingredients and was not safe for human use.

98. Defendants breach their warranty and/or contract obligations by placing the Product into the stream of commerce and selling it to consumers. The fact that the Product has been recalled is an admission that the Product is unfit for its intended use and purpose, cannot be sold as consumable food (potato chips), and substantially and/or completely impairs the use and value of the Product

99. Defendant thereby breached the following state warranty laws

a. Code of Ala. § 7-2-313;
b. Alaska Stat. § 45.02.313;
c. A.R.S. § 47-2313;
d. A.C.A. § 4-2-313;
e. Cal. Comm. Code § 2313;
f. Colo. Rev. Stat. § 4-2-313;
g. Conn. Gen. Stat. § 42a-2-313;
h. 6 Del. C. § 2-313;
i. D.C. Code § 28:2-313;
j. Fla. Stat. § 672.313;
k. O.C.G.A. § 11-2-313;
l. H.R.S. § 490:2-313;
m. Idaho Code § 28-2-313;

n. 810 I.L.C.S. 5/2-313;

o. Ind. Code § 26-1-2-313;

p. Iowa Code § 554.2313;

q. K.S.A. § 84-2-313;

r. K.R.S. § 355.2-313;

s. 11 M.R.S. § 2-313;

t. Md. Commercial Law Code Ann. § 2-313;

u. 106 Mass. Gen. Laws Ann. § 2-313;

v. M.C.L.S. § 440.2313;

w. Minn. Stat. § 336.2-313;

x. Miss. Code Ann. § 75-2-313;

y. R.S. Mo. § 400.2-313;

z. Mont. Code Anno. § 30-2-313;

aa. Neb. Rev. Stat. § 2-313;

bb. Nev. Rev. Stat. Ann. § 104.2313;

cc. R.S.A. 382-A:2-313;

dd. N.J. Stat. Ann. § 12A:2-313;

ee. N.M. Stat. Ann. § 55-2-313;

ff. N.Y. U.C.C. Law § 2-313;

gg. N.C. Gen. Stat. § 25-2-313;

hh. N.D. Cent. Code § 41-02-30;

ii. II. O.R.C. Ann. § 1302.26;

jj. 12A Okl. St. § 2-313;

kk. Or. Rev. Stat. § 72-3130;

ll. 13 Pa. Rev. Stat. § 72-3130;

mm. R.I. Gen. Laws § 6A-2-313;

nn. S.C. Code Ann. § 36-2-313;

oo. S.D. Codified Laws, § 57A-2-313;

pp. Tenn. Code Ann. § 47-2-313;

qq. Tex. Bus. & Com. Code § 2.313;

rr. Utah Code Ann. § 70A-2-313;

ss. 9A V.S.A. § 2-313;

tt. Va. Code Ann. § 59.1-504.2;

uu. Wash. Rev. Code Ann. § 6A.2-313;

vv. W. Va. Code § 46-2-313;

ww. Wis. Stat. § 402.313; and

xx. Wyo. Stat. § 34.1-2-313

100. Defendants were on notice of the aforementioned breaches of the above-described warranties via notice letter mailed on June 23, 2026. Likewise, Defendants were on notice on account of their own recall, consumer complaints and testing of the Products.

101. Plaintiff and Class Members were injured as a direct and proximate result of Defendants' breach because they would not have purchased the Product if they had known the truth about the Product. Plaintiff and Class Members suffered damages in an amount to be determined by the Court and/or jury, in that, among other things, they purchased and paid for Products that did not conform to what Defendant promised in its Product promotion, marketing, advertising, packaging and labeling, and they were deprived of the benefit of their bargain and

spent money on Products that had less value than warranted or Products that they would not have purchased and used had they known the true facts about them. In addition, Plaintiff and Class Members paid a premium for Products that did not conform to the Defendant's warranties.

**FOURTH CAUSE OF ACTION**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(On Behalf of Plaintiff and All Class Members)**

102. Plaintiff repeat and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein

103. Plaintiff bring this claim individually and on behalf of all similarly situated Class Members.

104. Defendants specifically deal in potato chips and other food products, including through their manufacturing, distribution, and sale of the Zapp's and Dirty potato chip products.

105. Defendants, as the designers, manufacturers, packagers, labelers, marketers, distributors, and/or sellers of the Product, impliedly warranted that the Product was merchantable, i.e. the Product could be sold as potato chips, and is fit for its ordinary purpose, i.e. the Products could be safely used as "potato chips" and was safe for human consumption.

106. In fact, the Product is not fit for such purpose or merchantable because the Product is contaminated, was not manufactured or tested in compliance with good manufacturing practices, and was not safe for human use, particularly for consumption as it was advertised .

107. As a proximate result of Defendants' above-described breach of implied warranty, Plaintiff and Class Members have sustained damages in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and Class Members)**

108. Plaintiff repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

109. Defendant was unjustly enriched at the expense of Plaintiff and other Class Members in the form of monies that Plaintiff and other Class Members paid for the Products.

110. Plaintiff and Class Members seek restitution and disgorgement of such inequitably obtained monies.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and the Class, prays for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class under Rule 23 of the FRCP;

(b) An Order requiring Defendant to establish a blood testing program for Plaintiff and the Class, as well as to establish a medical monitoring protocol for Plaintiff and the Class to monitor the individual health and diagnose at an early stage any ailments associated with exposure to *Salmonella*;

(c) Awarding monetary damages and treble damages;

(d) Awarding statutory damages of $50 per transaction, and treble damages for knowing and willful violations, pursuant to N.Y. GBL § 349;

(e) Awarding statutory damages of $500 per transaction pursuant to N.Y. GBL § 350;

(f) Awarding punitive damages;

(g) Awarding Plaintiff and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys, experts, and

reimbursement of Plaintiff's expenses; and

(h) Granting such other and further relief as the Court may deem just and proper.

Dated: June 24, 2026

Respectfully submitted,

**BRYSON HARRIS SUCIU**
**& DEMAY PLLC**

*/s/ Russell M. Busch*
11 Park Place, 3rd Floor
New York, NY 10007
Tel: (919) 926-7948
rbusch@brysonpllc.com

Nick Suciu III
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Tel: (616) 678-3180
nsuciu@brysconpllc.com

**SULTZER & LIPARI, PLLC**

Jason P. Sultzer, Esq.
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12601
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com

*On behalf of Plaintiff and the Proposed Classes*